UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN COOPER, *et al.*,<br><br>               Plaintiffs,<br><br>v.<br><br>TRIWEST HEALTHCARE<br>ALLIANCE CORP.,<br><br>               Defendant. | Case No. 11-cv-2965-L(RBB)<br><br>**ORDER GRANTING MOTION TO<br>DISMISS WITH LEAVE TO AMEND<br>[DOC. 8]** |

   This action arises from Plaintiffs Carolyn Cooper and Jason Cooper's allegations that the failure of Defendant TriWest Healthcare Alliance Corp. ("TriWest") to provide 24-hour nursing care for their daughter, S.C., constituted a breach of a duty that resulted in their child's death. Defendant now moves to dismiss the complaint. Plaintiffs oppose.

   The Court found this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). (Doc. 12.) For the following reasons, the Court **GRANTS WITH LEAVE TO AMEND** Defendant's motion to dismiss.

//

//

## I.     BACKGROUND

Mr. Cooper is a Master Sergeant in the United States Marine Corps, and Mrs. Cooper was employed as a Financial Controller for WJ Commercial Enterprises. (Compl. ¶¶ 1–2.) They are S.C.'s parents. (*Id.* ¶¶ 1–2, 10.) Though not alleged in their complaint, Plaintiffs state in their opposition to this motion that "TriWest is a private regional contractor covering the West region," and "TRICARE regulations govern the general conduct of private regional contractors such as TriWest." (Pls.' Opp'n 2:21–24.) "TRICARE is a managed health care program covering members of the armed forces and their families," and "[t]he TRICARE Management Activity ("TMA") is the government entity that manages and administers the TRICARE program." (*Id.* at 2:15–18.)

In September 2008, S.C. was born to Plaintiffs. (Compl. ¶ 9.) At the time of birth, Plaintiffs allege that S.C. was a healthy female child. (*Id.*)

However, on March 28, 2009, S.C. was diagnosed with severe global cerebral atrophy, a disease affecting the brain. (Compl. ¶ 11.) The cause of the disease was unknown. (*Id.*) Symptoms included seizures, hypertonic muscle tone, microcephaly, the inability to stand without multiple points of support and restraint, and the inability to hold her head up. (*Id.* ¶ 12.) S.C.'s medical condition allegedly required a complex medication regimen with a need for skilled supervision to prevent possible interaction and side effects. (*Id.* ¶ 13.)

On June 19, 2009, Maxim Home Health Care performed an "in home" evaluation of S.C., and concluded that her condition required "Skilled Nursing supervision." (Compl. ¶ 14.) Consequently, it requested Skilled Nursing services from Defendant. (*Id.*) On June 29, 2009, Defendant denied the request. (*Id.*)

Following the denial, Plaintiffs turned to Medi-Cal, which approved Skilled Nursing supervision for 40 hours per week. (Compl. ¶ 15.) They used the 40 hours during their work week, but allege that they were forced to care for S.C. during their "off work" hours. (*Id.*) Caring for S.C. during that time period required Plaintiffs to remain awake during the nights to make sure that she did not aspirate and choke. (*Id.* ¶ 16.) However, "there were many nights that Plaintiffs were unable to stay awake and had to make the decision to sleep and pray that S.C.

did not choke while they were sleeping." (*Id.*)  Plaintiffs also took turns staying up as much as possible to make sure that S.C. was properly monitored.  (*Id.* ¶ 17.)  During the same time, Mrs. Cooper was also pregnant with her second child.  (*Id.* ¶ 15.)

On July 28, 2009, Plaintiffs requested that Defendant reconsider its June 29, 2009 decision to deny Skilled Nursing services.  (Compl. ¶ 18.)  Dr. Kris Baik of the Naval Medical Center in Camp Pendleton supported Plaintiffs' request for reconsideration by submitting a formal request to Defendant for nursing services "based on her belief that S.C. qualified to receive the requested benefit."  (*Id.*)  Plaintiffs allege that around that time, S.C.'s condition had deteriorated further with seizures that were new and poorly controlled.  (*Id.*)  Records from the Naval Medical Center Balboa were also added to the reconsideration request "showing S.C.'s first confirmed seizure[,] which lasted about an hour."  (*Id.*)  Moreover, another doctor, Dr. J. Serena, also provided her notes concerning S.C.'s neurological condition to further support the reconsideration request.  (*Id.* ¶ 20.)  Those notes addressed "increasing issues with spasticity and irritability and the need for the administration of medications such as diazepam."  (*Id.*)  Maxim Home Health Care also prepared and updated their evaluation of S.C.'s condition to support the reconsideration request "based on [S.C.'s] evolving medical condition and reached the same conclusion it had reached before[,] that skilled nursing supervision was required."  (*Id.*)  On August 26, 2009, Defendant denied the reconsideration request.  (*Id.* ¶ 21.)

Thereafter, Plaintiffs concentrated their efforts on keeping S.C. healthy.  (Compl. ¶ 22.) They were told that "if S.C.'s needs were properly addressed by proper skilled nursing supervision, she would likely live at least 10 to 15 years and could live much longer."  (*Id.*)  But Plaintiffs do not allege the source of that information.  According to Plaintiffs, aspiration pneumonia was the greatest threat to S.C.'s health.  (*Id.* ¶ 23.)  S.C. also had many daily needs that Plaintiffs were allegedly unable to provide themselves.  (*Id.*)  As a result, Plaintiffs suffered from "great sleep deprivation."  (*Id.*)

//
//
//

On September 1, 2009, S.C. suffered her first documented aspiration pneumonia. (Compl. ¶ 24.) She was treated with antibiotics at Camp Pendleton Naval Hospital and recovered. (*Id.*) But Plaintiffs allege that they were "specifically told that it was greatly important that they watch S.C.'s condition during the nights so that if any vomiting occurs, it can be cleaned up preventing any possible pneumonia." (*Id.*)

On February 8, 2010, S.C. experienced a second aspiration during the night which led to another pneumonia. (Compl. ¶ 25.) These episodes recurred on March 31, June 1, and June 17 in 2010. (*Id.*) Each time she was treated at Camp Pendleton. (*Id.*) According to Plaintiffs, with each passing episode, S.C. became weaker, more prone to pneumonia, and more resistant to antibiotics. (*Id.* ¶ 26.)

On July 19, 2010, Dr. Matthew Piccone of Camp Pendleton Pediatrics submitted an electronic request for services to Defendant. (Compl. ¶ 27.) The request was denied on the same day. (*Id.*) Thereafter, Plaintiffs submitted a request to Defendant for redetermination of the denial of Dr. Piccone's request. (*Id.* ¶ 28.) Once again, the request was denied. (*Id.*)

On November 12, 2010, Dr. Mower, a neurologist, submitted a new request to Defendant, which included more "in depth" analysis of S.C.'s condition and a letter from Dr. Piccone. (Compl. ¶ 29.) The request was denied. (*Id.*) On January 6, 2011, Plaintiffs submitted another request for reconsideration of Defendant's denial of Dr. Mower's request. (*Id.* ¶ 30.) Again, the request was denied. (*Id.*)

Finally, Plaintiffs submitted a final appeal to the TRICARE Management Activity in Colorado. (Compl. ¶ 31.) That appeal remained undecided until it became moot by S.C.'s death. (*Id.*)

S.C. suffered additional episodes of aspiration pneumonia in 2011 on March 22 and July 16. (Compl. ¶ 33.) On July 28, 2011, she suffered an aspiration burn and woke up to a 103-degree fever. (*Id.*)

On August 9, 2011, S.C. passed away. (Compl. ¶ 34.)

On December 20, 2011, Plaintiffs filed a complaint asserting the following six causes of action: (1) wrongful death / negligence, (2) intentional infliction of emotional distress ("IIED"),

(3) negligent infliction of emotional distress ("NIED"), (4) survival action for negligence, (5) survival action for intentional infliction of emotional distress, and (6) survival action for negligent infliction of emotional distress.  Defendant now moves to dismiss all six of causes of action in the complaint.  (Doc. 8.)  Plaintiffs oppose.  (Doc. 10.)

## II.     LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party.  *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted).  In fact, the court does not need to accept any legal conclusions as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, — , 129 S. Ct. 1937, 1949 (2009)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal citations omitted).  Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

### III. DISCUSSION

#### A. Plaintiffs Fail to Demonstrate that Defendant Owed a Duty.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991). "The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated, or (b) an affirmative duty where the person occupies a particular relationship to others." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal. App. 4th 1011, 1016-17 (1997) (internal quotation marks omitted). "In the first situation, [the defendant] is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *Id.* However, "[t]here is no affirmative duty to render assistance unless the defendant stands in a special relationship to the plaintiff or has put the plaintiff in a position of peril." *Id.* Thus, "absent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 481 (1996).

Similarly, a claim of NIED "contains the traditional elements of duty, breach, causation and damages." *Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 106 (1992). "NIED claims are merely a species of negligence, and thus, a [p]laintiff asserting an NIED claim must show that the defendant owed the plaintiff a duty of care." *Schwartz v. Lassen Cnty. ex rel. Lassen Cnty. Jail (Detention Facility)*, 838 F. Supp. 2d 1045, 1061 (E.D. Cal. 2012) (citing *Lawson v. Mgmt. Activities*, 69 Cal. App. 4th 652, 656 (1999)).

//

Defendant argues that the complaint lacks sufficient factual allegations to demonstrate a duty of care owed to either Plaintiffs or S.C. (Def.'s Mot. 10:11–21; Def.'s Reply 5:1–15.) It bases that argument on the contention that "[t]he complaint is devoid of any information about TriWest, other than the allegation that it is a Delaware corporation with its principal place of business in Phoenix." (Def.'s Mot. 10:12–14.) In response, Plaintiffs argue that "[a]s a private regional contractor for the TRICARE system, TriWest had a duty to exercise reasonable care in its decision-making process with respect to the approval of skilled nursing supervision for . . . S.C." (Pls.' Opp'n 6:14–28.) The Court agrees with Defendant.

Plaintiffs appear to base Defendant's purported duty of care on the "private regional contractor" relationship within the TRICARE system between themselves, S.C., and Defendant. (*See* Pls.' Opp'n 6:14–28.) That would fall within the second general type of legal duty—"an affirmative duty where the person occupies a particular relationship to others." *See McGettigan*, 57 Cal. App. 4th at 1016-17. But as Defendant points out, Plaintiffs have not alleged any such particular relationship between themselves or S.C. and Defendant. In fact, even though Plaintiffs emphasize the importance of the TRICARE system to establish that a duty was owed, there is only one reference to TRICARE in the complaint in Paragraph 31, which merely identifies where the final appeal was submitted. (*See* Compl. ¶ 31.) Furthermore, "TriWest" is used twenty-two times throughout the complaint—including the case name in the caption of the complaint—but nineteen of those times were in relation to allegations regarding the repeated requests and denials for nursing services, and none of the allegations provide any basis to establish that Defendant owed Plaintiffs or S.C. any duty as a result of their relationship. Therefore, Plaintiffs fail to demonstrate that Defendant owed Plaintiffs or S.C. any duty of care related to the request for nursing supervision.[1] *See McGettigan*, 57 Cal. App. 4th at 1016-17.

---

[1] In response to Defendant identifying Plaintiffs' failure to allege any facts regarding the TRICARE system, Plaintiffs state that "one or two simple paragraphs may be added to the Complaint stating that TriWest is the regional contractor responsible for servicing TRICARE beneficiaries in the West region." (Pls.' Opp'n 6:21–24.) It appears, though, that the addition of that allegation will provide little in illuminating the nature of the relationship between Plaintiffs, S.C., and Defendant, particularly with respect to determining whether there is a sufficient factual basis for a "particular relationship" that establishes a duty owed by Defendant.

By failing to demonstrate that Defendant owed Plaintiffs or S.C. a duty, Plaintiffs fail to sufficiently allege a cause of action for wrongful death based on negligence. *See Mendoza*, 66 Cal. App. 4th at 1339. Similarly, Plaintiffs also fail to sufficiently allege a cause of action for NIED. *See Schwartz*, 838 F. Supp. 2d at 1061. Consequently, there is no basis for Plaintiffs' survival action for negligence and NIED, and those, too, also fail. *See* Cal. Civ. Proc. Code § 377.20.

**B.     Plaintiffs Fail to Show Extreme and Outrageous Conduct by Defendant.**

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993) (citations and internal quotation marks omitted). For conduct to be "outrageous," it must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community," and the defendant must have engaged in "conduct intended to inflict injury or engaged in with the realization that injury will result." *Id.* (citations and internal quotation marks omitted).

Plaintiffs allege in their complaint that "[Defendant's] repeated failure to approve a benefit that rightfully belonged to Plaintiffs' minor child despite overwhelming medical evidence mandating approval, constitutes an extreme and outrageous conduct," and also "[b]y denying a benefit that was absolutely necessary for S.C.'s well-being despite multiple professional medical opinions mandating approval, Defendants [sic] acted in an extreme and outrageous manner that should not be tolerated in a civilized society." (Compl. ¶¶ 42, 62; *see also* Pls.' Opp'n 7:1–21.) However, as discussed above, Plaintiffs fail to establish that Defendant owed any duty of care to Plaintiffs or S.C. Thus, without an affirmative duty to act, or any other reason compelling Defendant to act, the refusal to grant S.C. nursing care cannot rise to the level of extreme and outrageous conduct. *See Potter*, 6 Cal. 4th at 1001. Additionally, denying a request for 24-hour nursing care for S.C. in and of itself—though

arguably insensitive and morally reprehensible—does not constitute extreme and outrageous conduct. *Cf. Coleman v. Republic Indem. Ins. Co. of Cal.*, 132 Cal. App. 4th 403, 417 (2005) ("California courts have held that delay or denial of insurance claims is not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress").

## IV.     CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS WITH LEAVE TO AMEND** Defendant's motion to dismiss (Doc. 8.), and **DISMISSES** the complaint in its entirety.  If Plaintiffs decide to file an amended complaint, they must do so by **October 19, 2012**.

**IT IS SO ORDERED.**

DATED: October 4, 2012

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. RUBEN B. BROOKS
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL